*843
 
 MICHAEL E. KIRBY, Judge.
 

 _JjAt issue in this appeal is the validity of a premarital agreement (“the agreement”) signed by the plaintiff, Joseph L. Baer (“Mr.Baer”), and the defendant, Sylvia C. Cabiran (“Ms.Cabiran”). Following a trial, the trial court concluded the agreement was valid and, pursuant thereto, rendered a judgment ordering Mr. Baer to pay Ms. Cabiran spousal support and attorney’s fees. Mr. Baer appealed the judgment and another judgment denying his motion for a new trial.
 
 [1]
 
 For the reasons that follow, we affirm the trial court judgments.
 

 FACTS AND PROCEDURAL HISTORY
 

 Mr. Baer and Ms. Cabiran met in 2001. At the time, Ms. Cabiran was a forty-seven year-old licensed attorney and Mr. Baer was a twenty-seven year-old licensed riverboat captain. The parties dated for several months before deciding to marry in December, 2001.
 
 [2]
 
 Several days prior to their wedding, Mr. Baer told Ms. Cabiran that he wanted to enter into an antenuptial agreement to reserve their ^respective property as separate. To save the costs of an attorney, he suggested that Ms. Cabi-ran draft the agreement.
 

 Together, the parties went to Loyola Law Library where they researched and reviewed several premarital contracts. After Mr. Baer had expressed the terms he wanted in the contract, Ms. Cabiran drafted the agreement. Reviewing the initial draft, Mr. Baer objected to the child and spousal support provisions. Ms. Cabi-ran revised the draft and gave a copy to Mr. Baer. Because she had no experience ■writing premarital contracts, Ms. Cabiran told Mr. Baer that she wanted an experienced attorney to review her draft of the agreement before they signed it. Mr. Baer agreed.
 

 Ms. Cabiran called Lindsey Ladouceur, an attorney who specialized in marriage and family law, and asked her to review the draft of the premarital agreement. Ms. Ladouceur had Ms. Cabiran fax the proposed agreement to her office. Several days later, Ms. Ladouceur called Ms. Cabi-ran, informing her that she had made a few changes, and suggested that she come to her office to review the changes.
 

 Mr. Baer never retained his own attorney to review Ms. Cabiran’s draft of the agreement. He did, however, go with Ms. Cabiran to Ms. Ladouceur’s office on December 19, 2001, to review the agreement. Although Ms. Ladouceur went over the agreement she had prepared, the parties left her office without signing it.
 
 [3]
 

 
 *844
 
 |sThe parties returned home where Ms. Cabiran made copies of the agreement she herself had drafted. They later brought the original document and copies to a notary public kiosk in Lakeside Mall where they executed the agreement before a notary and two witnesses. Paragraphs 15 and 33 of the agreement, the provisions in dispute, provide as follows:
 

 15. SPOUSAL SUPPORT. In the event of divorce, dissolution of marriage, separation, or similar proceedings are filed by either party in any state or country, the parties agree that neither party will request or receive alimony or support, whether temporary, rehabilitative, permanent, or lump sum. In consideration for not requesting alimony or other support under any of the proceedings named above, the Husband shall pay to the Wife a sum equal to $20,000 per year paid in equal monthly installments until the death or remarriage of the Wife or upon the death of the Husband, which ever occurs first. In the event that the Husband is earning more than twice as much as the Wife, then the spousal support amount shall be increased and based on the parties’ standard of living. In the event that the Wife is earning a stable yearly salary that is more than the Husband’s salary, and the Husband is working at a fair market salary, then the spousal support terms for the Husband to pay the Wife shall not apply.
 

 ⅜ * * * * *
 

 33. ATTORNEY’S FEES IN ENFORCEMENT. A party who fails to comply with any provision or obligation contained in this agreement shall pay the other party’s attorneys’ fees, costs, and other expenses reasonably incurred in enforcing this agreement and resulting from the noncompliance.
 

 The parties recorded the executed agreement in the public records on December 19, 2001, and were married the next day.
 

 On January 3, 2007, Mr. Baer filed a petition for divorce. Ms. Cabiran timely filed an answer and reconventional demand, seeking to enforce the Lpremarital agreement. At a hearing on March 26, 2007, Ms. Cabiran submitted her state and federal income tax returns as proof of her income, but Mr. Baer had no proof of his income. Nonetheless, the trial court rendered a judgment of divorce on April 3, 2007, and directed Mr. Baer to commence paying spousal support in accord with the agreement.
 

 When Ms. Cabiran received no spousal support, she filed a motion to make the premarital agreement a judgment of the Court. She later filed a rule for contempt, which the trial court granted on June 18, 2007. When Mr. Baer discovered a warrant had been issued for his arrest, he arranged for his employer to pay Ms. Ca-biran $1,000.00 and agreed to a wage garnishment for future payments. The day after the wage garnishment went into effect, Mr. Baer quit his job. However, Ms. Cabiran did receive $77.00 as a result of the wage garnishment.
 

 Over the next year and a half, the dispute escalated with the parties’ filing numerous pleadings, discovery motions, and rules for contempt. In February 2009, Mr. Baer, who by then had retained a new attorney, filed a motion for new trial after being held in contempt and a motion for summary judgment. He also filed a petition to nullify the premarital agreement on the grounds of fraud, error and duress.
 

 The trial court granted Mr. Baer a new trial. Following the trial on March 30, 2009, the trial court concluded the premarital agreement was valid, as the parties had a meeting of the minds regarding the terms of the agreement. The terms, the
 
 *845
 
 court found, were clear, unambiguous, and not against public policy. The court also concluded there was no evidence of fraud, error, failure of cause, or duress to vitiate Mr. Baer’s consent to the agreement. Thus, the trial court rendered the judgment ordering Mr. Baer to pay Ms. Cabi-ran $33,200.00 in |.^accrued monthly spousal support; $22,000.00 in attorney fees; and $1,666.67 in monthly spousal support, beginning April 1, 2009 until her death or remarriage. Mr. Baer filed another motion for a new trial, which the trial court denied. This appeal followed.
 

 ISSUES
 

 On appeal, Mr. Cabiran raises eleven assignments of error:
 

 1. The trial court erred in finding no fraud, error or duress on the part of Ms. Cabiran;
 

 2. The trial court erred in finding that a child conception provision must be included within the premarital agreement to render the same the object of the agreement;
 

 3. The trial court erred in finding that Ms. Cabiran did not have an unfair advantage as drafter of the agreement;
 

 4. The trial court erred in finding that the premarital agreement is not in violation of public policy;
 

 5. The trial court erred in finding that the premarital agreement is not a gratuitous contract;
 

 6. The trial court erred in finding that the premarital agreement is not ambiguous;
 

 7. The trial court erred in sustaining an objection to testimony relevant to the parties’ financial ability to support themselves;
 

 8. The trial court erred by dismissing Mr. Baer’s motion for summary judgment;
 

 9. The trial court erred in awarding Ms. Cabiran attorney’s fees;
 

 10. The trial court erred in granting Ms. Cabiran’s motion to deem request for admissions admitted;
 

 11. The trial court erred in denying Mr. Baer’s motion for a new trial;
 

 |fiOur consideration of the assignments of error follows.
 

 STANDARD OF REVIEW
 

 It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong.
 
 Foley v. Entergy La. Inc.,
 
 2006-0983, p. 10 (La.11/29/06); 946 So.2d 144, 153. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Id.
 
 If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Id.
 
 at p. 10, 946 So.2d at 153. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Id.
 

 DISCUSSION
 

 Assignment of Error No. I
 

 Mr. Baer argues that the trial court erred in finding no evidence of fraud, error or duress on the part of Ms. Cabiran in confecting the premarital agreement. He contends that Ms. Cabiran’s own testimony was sufficient to prove fraud on her part, citing La. Civ.Code art.1957
 
 [4]
 
 . Specifical
 
 *846
 
 ly, he points out that Ms. Cabiran testified that they had discussed marriage and the necessity of marrying before the end of the year to acquire, through his employer, health insurance that would cover 17fertility treatments for her. Mr. Baer further emphasizes that Ms. Cabiran testified that, prior to their signing the agreement and marrying, she never disclosed that she previously had undergone fertility treatments without success. Had Ms. Cabiran disclosed that fact, Mr. Baer asserts, he would not have entered into the premarital agreement and marriage. Relying on La. Civ.Code arts.1948, 1949, 1953, 1954 and 1955
 
 [5]
 
 , he contends that Ms. Cabiran’s silence regarding her prior, unsuccessful fertility treatments constituted fraud and/or error induced by fraud, which vitiated his consent to the agreement.
 

 Ms. Cabiran, on the other hand, admits that she never told Mr. Baer about the two unsuccessful fertility treatments before they signed the agreement and married. According to her, the information was irrelevant considering that the prior treatments were by artificial insemination, rather than in vitro fertilization, a more specialized procedure that the couple wanted to use, because it had a higher success rate in older women and was covered under Mr. Baer’s health insurance policy. Ms. Cabiran also notes that the trial court, after considering the evidence, found that Mr. Baer had defrauded her because he lied about his assets and finances in the agreement and failed to disclose prior to their marriage that he was, in fact, gay.
 

 | sConsidering the evidence, we find no merit to Mr. Baer’s argument that Ms. Cabiran’s silence regarding her failed fertility treatments constituted fraud so as to vitiate his consent to the agreement. Mr. Baer acknowledged that he knew Ms. Ca-biran was 47 years of age when they decided to marry and that her chances of conceiving, either naturally or through other means, were very slight. He also knew prior to their marriage that she had had an unsuccessful pregnancy in the past.
 

 , Mr. Baer also contends that he was under duress sufficient to vitiate his consent given the time constraints within which the parties had to marry, i.e., before the end of the year. Again, we find no merit to this argument. Although the parties needed to marry before the end of the year to have Ms. Cabiran’s fertility treatments covered under Mr. Baer’s insurance, the evidence clearly indicates that Mr. Baer had enough time to consult with his own attorney before signing the agreement but declined to do so.
 

 
 *847
 

 Assignment of Error No. 2
 

 Mr. Baer argues in his second assignment of error that the trial court erred in concluding that the absence of a mandatory conception and birth provision in the agreement negated his claim that the birth of a child was the sole object of the contract. According to him, the trial court could have reasonably concluded that the birth of a child was the object of the agreement considering the parties’ testimony that they had to marry by the end of the year to obtain insurance coverage for any necessary fertility treatments. Mr. Baer contends that because Ms. Cabiran never conceived and gave birth during their marriage, i.e., the object of the contract never occurred, the premarital agreement should be nullified. He | nalso asserts that requiring a conception and birth provision in a premarital contract would be against public policy because it would impose upon the parties to a marriage contract requirements other than those set forth in La. Civ.Code art. 87.
 

 We find no merit to the second assignment of error. The trial court found that, considei’ing the parties’ failure to include a mandatory birth provision, the birth of a child was not the substantial or principal cause of the premarital agreement or marriage. Rather, she found the substantial cause of the agreement, insofar as Mr. Baer was concerned, was financial. According to the court, Mr. Baer, who had no liquid assets, wanted to marry Ms. Cabi-ran to use her financial assets and excellent credit to secure financing for the purchase of a riverboat.
 

 The evidence in the record clearly supports the trial court’s finding. Prior to the marriage, Ms. Cabiran had approximately $73,000.00 in liquid assets, an automobile, a house and other personal property. Mr. Baer, on the other hand, owned an automobile and some furniture. During the marriage, Ms. Cabiran loaned Mr. Baer nearly $74,000.00 for expenses related to the riverboat. She also did a significant amount of legal work for him, but was never paid. While Mr. Baer did pay back some of the money he owed, Ms. Cabiran still had to put a lien on the riverboat to protect her interests.
 

 Assignment of Error No. 3
 

 In the third assignment of error, Mr. Baer argues that Ms. Cabiran, an attorney, had a distinct advantage in drafting the agreement to her benefit and that the trial court erred in concluding otherwise. He contends that considering their intimate relationship, he trusted Ms. Cabi-ran to draft an agreement that would have been equally beneficial to both of them. Mr. Baer also contends that Ms. Cabiran | ipviolated Rule 4.3 of the Rules of Professional Conduct
 
 [6]
 
 by not advising him to secure his own counsel.
 

 The evidence in the record indicates that both Ms. Cabiran and Mr. Baer went to the Loyola Law Library to research premarital agreements. Ms. Cabiran composed the agreement using provisions from several different premarital contracts. Upon reviewing the initial draft, Mr. Baer
 
 *848
 
 objected to the spousal and child support provisions. She revised the agreement. Nevertheless, because Ms. Cabiran had no experience writing premarital contracts, she told Mr. Baer that she wanted to have another attorney review it before they signed it. He agreed. Although the parties dispute whether or not Ms. Cabiran advised Mr. Baer to retain his own attorney to review the draft of the agreement, it is undisputed that he never did so. Nonetheless, Mr. Baer and Ms. Cabiran both met with Ms. Ladouceur and had the opportunity to ask her questions about the agreement. It was only after Mr. Baer told Ms. Ladouceur that he was not going to pay for her services that she abruptly ended their meeting.
 

 After reviewing the record, we find no merit to Mr. Baer’s claim that Ms. Cabi-ran, an attorney, had a distinct advantage in drafting the agreement. Ms. Baer, an experienced, licensed riverboat pilot, acknowledged that he was familiar with various contracts used in the maritime industry. He also admitted that he had ample opportunity to retain his own counsel to draft or review the agreement but |ndid not do so because he did not want to pay for legal work that Ms. Cabiran could provide for free. The third assignment of error is meritless.
 

 Assignment of Error No. 4
 

 Mr. Baer argues in his fourth assignment of error that, considering Ms. Cabiran’s testimony that she included the spousal support provision to deter a divorce, the agreement is contrary to public policy because it “created golden handcuffs” forcing him to remain in the marriage.
 

 La. Civ.Code art. 7 provides that “[p]er-sons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.” In
 
 McAlpine v. McAlpine,
 
 94-1594 (La.9/5/96), 679 So.2d 85, the Louisiana Supreme Court considered the issue of whether an antenuptial agreement waiving permanent alimony was against public policy. The court concluded that permanent alimony is not a law enacted for the public interest but rather enacted to protect individuals, i.e., not-at-fault divorced spouses in need, and, thus, the prohibition found in La. Civ.Code art. 7 did not apply.
 
 Id.,
 
 679 So.2d at 93.
 

 Although Ms. Cabiran wanted the spousal support provision to deter a divorce, we cannot say its inclusion in the agreement was against public policy. Like permanent alimony, the spousal support provision at issue was for the protection of an individual, Ms. Cabiran, rather than the public in general. Mr. Baer’s fourth assignment of error has no merit.
 

 Assignment of Error No. 5
 

 In the fifth assignment
 
 of error,
 
 Mr. Baer argues that the trial court erred in determining that the premarital agreement was not a gratuitous contract. He | ^contends that Ms. Cabiran was the only party to benefit under the agreement. We disagree.
 

 “A contract is gratuitous when one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return.” La. Civ.Code art. 1910. Contrary to his claim, the evidence clearly supports the finding that Mr. Baer benefited substantially from the premarital agreement. Pursuant to the agreement, the parties maintained a separate property regime during their marriage. Thus, the property Mr. Baer acquired during the marriage, including his salary, a riverboat, and B & C Marine, LLC, remained his separate property. Without Ms. Cabiran’s financial backing, Mr. Baer would not have been able to purchase the riverboat. Also,
 
 *849
 
 during their five-year marriage, Ms. Cabi-ran labored many, many hours without pay on Mr. Baer’s riverboat while he lived rent-free in her home. Considering the evidence, we agree with the trial court that the premarital agreement was not a gratuitous contract benefiting only Ms. Cabiran.
 

 Assignment of Error No. 6
 

 Mr. Baer complains in the sixth assignment of error that the terms of the premarital agreement are ambiguous. Specifically, he refers to the spousal support provision in Paragraph 15 which provides that in the event of a divorce neither party will request or receive alimony or support but also mandates the husband to pay the wife $20,000.00 per year, in equal monthly installments, in consideration for her not requesting alimony or other support. He further complains that because the terms “income,” “salary,” and “stable” are undefined, the spousal support provision is subject to various interpretations, making it impossible to ascertain the parties’ intent.
 

 | ^“Interpretation of a contract is the determination of the common intent of the parties.” La. Civ.Code art.2045. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ.Code art.2046. “The words of a contract must be given their generally prevailing meaning.” La. Civ.Code art.2047. “Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.” La. Civ.Code art.2048. “A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.” La. Civ.Code art. 2049. “Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La. Civ.Code art.2051.
 

 At trial, Mr. Baer’s counsel posed the question that if Ms. Cabiran was to make $250,000.00 or $300,000.00 a year, was Mr. Baer obligated to pay her the $20,000.00. The trial court responded:
 

 As the Court reads the document — and I think it is Exhibit 2 on the second page, paragraph 15, the phrase I’m looking at is: “In the event that the wife is earning a stable yearly salary that is more than the husband’s salary and the husband is working [at] a fair market value, then the spousal support terms for the husband to pay the wife shall not apply.” Well, given a hypothetical] that she would be making $800,000 and he would be making an average $100,000, clearly this contract would not apply. She would not be paid the $20,000. And, so, the Court believes that there is no ambiguity here. That’s why I don’t have to look at intent ... The court believes that the four corners of the document is (sic) clear. And that’s why we need not look at anything else. It’s clear. The Court does not believe there’s any ambiguity. I believe that this is a valid contract.
 

 114After reviewing the premarital agreement, we agree with the trial court that its terms are clear and unambiguous, and, therefore, enforceable. Paragraph 15 is clearly marked “SPOUSAL SUPPORT.” Taken in context and given their generally prevailing meaning, the words “income,” “salary,” and “stable” are easily understood. Furthermore, in her answer and reconventional demand to Mr. Baer’s divorce petition, Ms. Cabiran did not request alimony or support but rather sought only to enforce the premarital agreement. Thus, she complied with the terms of the spousal support provision. We find no merit to the sixth assignment of error.
 

 
 *850
 

 Assignment of Error No. 7
 

 In the seventh assignment of error, Mr. Baer argues the trial court erred by excluding testimony regarding the parties’ financial ability to support themselves. He contends such evidence was necessary to ascertain the “yearly salary” of each party and to determine whether or not spousal support was due under the agreement.
 

 We find no merit to this assignment of error. The record contains ample testimony from each party to support the trial court’s finding that Mr. Baer earned significantly more income than Ms. Cabiran and, therefore, owed her spousal support pursuant to the agreement. In addition to the parties’ testimony, Ms. Cabiran submitted a schedule of her income and expenses, copies of cancelled checks reflecting her $1,124.00 monthly income as a guardian, and a pay stub from Excell Marine Corporation, Mr. Baer’s former employer, showing he had earned $57,879.36 during the first half of 2006.
 

 |
 
 Assignment of Error No.
 
 8
 

 Mr. Baer complains in the eighth assignment of error that the trial court erred in dismissing his motion for summary judgment
 
 [7]
 
 pursuant to La.Code Civ. Proc. art. 969(A)
 
 [8]
 
 . Specifically, he asserts that the premarital agreement was a contract between two persons who were independent and without community at the time they executed the contract and therefore art. 969(A) is not applicable.
 

 We agree with the trial court that summary judgment was not appropriate pursuant to La. Civ.Code art. 969(A). This case arises from the parties’ divorce proceedings. At issue is the validity of their premarital agreement wherein they renounced the legal community property regime. Furthermore, the record indicates material facts were still in dispute at the time of trial, precluding a summary judgment. This assignment of error is without merit.
 

 Assignment of Error No. 9
 

 In the ninth assignment of error, Mr. Baer argues the trial court erred in awarding Ms. Cabiran $22,000.00 in attorneys fees. He contends the fees are unwarranted and excessive. We disagree.
 

 “Attorneys fees are not allowed except where authorized by contract or statute.”
 
 State of Louisiana, Department of Transportation and Development v. Wagner,
 
 2010-0050, p. 1 (La.5/28/10), 38 So.3d 240, citing
 
 Huddleston v. Bossier Bank and Trust Co.,
 
 475 So.2d 1082, 1085 (La.1985). Also, the trial court is vested with great discretion in arriving at an award of attorneys fees.
 
 ORX Resources, Inc. v. MBW Exploration, L.L.C.,
 
 2009-0662, p. 12 (La.App. 4 Cir. 2/10/10), 32 So.3d 931, 938,
 
 writ denied,
 
 2010-0530 (La.5/7/10), 34 So.3d 862. A reasonable attorney’s fee is determined by the facts of an individual case.
 
 Id.
 

 Paragraph 33 of the premarital agreement provides that a party who fails to comply with any obligation in the agreement shall pay the other party’s attorney’s fees, costs and expenses reasonably incurred in enforcing the agreement and resulting from the noncompliance. The
 
 *851
 
 trial court determined the agreement was valid and that Mr. Baer had failed to comply with it. After reviewing the billing invoices from Ms. Cabiran’s attorney, the trial court found Ms. Cabman’s testimony that she had incurred $22,000.00 in attorney’s fees to be credible. Given those circumstances and considering that the case involved numerous pleadings, motions, and hearings over a two-year period, we cannot say the trial court abused its discretion awarding Ms. Cabiran $22,000.00 in attorney’s fees and costs.
 

 Assignment of Error No. 10
 

 Mr. Baer argues in the tenth assignment of error that the trial court erred in deeming admitted Ms. Cabiran’s requests for admissions.
 
 [9]
 

 At trial, Ms. Cabiran’s counsel, Mr. Jeffrey Bennett, asked the trial court to deem admitted her requests for admissions. Mr. Baer’s present counsel, Mr. Richard Per-qué, objected on the grounds that neither he nor Mr. Baer had ever seen the requests.
 

 | |7On appeal, Mr. Baer fails to show that the trial court would have reached a different result had the requests been denied. Thus, we decline to reverse the trial court judgment on the ground asserted in this assignment of error.
 

 Assignment of Eiror No. 11
 

 In the final assignment of error, Mr. Baer argues that he should be granted a new trial because the judgment is clearly contrary to the law and the evidence. See La.Code Civ. Proc. art.1972. We disagree. After reviewing the record, we find the trial court’s factual findings and conclusions are clearly reasonable and supported by the evidence. A new trial is not warranted. The last assignment of error is without merit.
 

 DECREE
 

 For the reasons set forth herein, the judgments of the trial court are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The judgment ordering Mr. Baer to pay the spousal support and attorney’s fees is dated April 9, 2009, and the judgment denying Mr. Baer’s motion for new trial is dated May 14, 2009.
 

 [2]
 

 . According to the testimony in the record, the parties began to discuss marriage when Ms. Cabiran thought she was pregnant. Nonetheless, after learning that was not the case, they decided to marry because both wanted to have children. Mr. Baer was aware that his health insurance plan through his employer would cover fertility treatments for a spouse provided they were married by December 31, 2001. Therefore, he suggested that he and Ms. Cabiran many before the end of the year.
 

 [3]
 

 .According to the testimony of both parties, Mr. Baer became upset because he believed Ms. Ladouceur was going over the document too quickly. He objected to the spousal support clause and wanted Ms. Ladouceur to answer his questions. He also told Ms. La-douceur that he did not want to pay for her services because her draft of the agreement was, for the most part, the same as the draft prepared by Ms. Cabiran. Ms. Ladouceur took back her draft of the agreement and told Mr. Baer that it was Ms. Cabiran, not he, who had retained her services and that if he was dissatisfied with her work product, then he should consult with his own attorney to draft an agreement to his satisfaction.
 

 [4]
 

 . La. Civ.Code art. 1957, provides: "Fraud need only be proved by a preponderance of
 
 *846
 
 the evidence and may be established by circumstantial evidence.”
 

 [5]
 

 . La. Civ.Code art. 1948, provides: "Consent may be vitiated by error, fraud, or duress”. La. Civ.Code art. 1949, provides: "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party”. La. Civ.Code art. 1953, provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the olher. Fraud may also result from silence or inaction". La. Civ.Code art. 1954, provides: "Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill”.
 

 This exception does not apply when a relationship of confidence has reasonably induced a party to rely on the other's assertions or misrepresentations.
 

 La. Civ.Code art. 1955, provides: "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent”.
 

 [6]
 

 . Rule 4.3 of the Rules of Profession Conduct, provides:
 

 Dealing with Unrepresented Person
 

 In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer’s role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonably possibility of being in conflict with the interests of the client.
 

 [7]
 

 . Mr. Baer had filed a motion for summary judgment, seeking to dispose of the matter on the basis that the parties had agreed in Paragraph 15 of the agreement that neither would request alimony or support in the event of a divorce.
 

 [8]
 

 . La.Code Civ. Proc. art. 969(A), provides, “Judgments on the pleadings and summary judgments shall not be granted in any action for divorce or annulment of marriage, nor in any case where the community, paraphernal, or dotal rights may be involved in an action between husband and wife.”
 

 [9]
 

 . The requests for admissions were served on Mr. Baer’s former counsel of record but were never answered. If the trial court determines that a request for admission is not timely answered, it may order that the matter be deemed admitted. See La.Code of Civ. Proc. art. 1467.